Ronald J. AVERY and Charlotte Avery, his wife, and James F. Avery and Lou H. Avery, his wife, Plaintiffs-Respondents,

v.

James B. McHUGH, Trustee in accordance with trust powers in Trust Agreement recorded in Book 183, page 63, in the office of the Recorder of Deeds of Franklin County, Defendant-Appellant.

No. 32732.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 26, 1967.

Motion to Transfer Denied Feb. 12, 1968.

Leo A. Politte, Politte, Moll & Poertner, Washington, for defendant-appellant.

James L. Anding, Anding & Anding, Pacific, for plaintiffs-respondents.

TOWNSEND, Commissioner.

Action for breach of warranty of seisin, in which plaintiffs had a verdict for $5,500. From a judgment thereon defendant appeals.

On June 11, 1964, the defendant McHugh, as trustee, executed a general warranty deed covering lands in Franklin County, naming the plaintiffs as grantees therein. A recitation of the complete description of the lands purportedly conveyed is not necessary; we set forth the part thereof which gives rise to the present controversy and italicize for emphasis:

" * * * thence south along Qr.Qr. line *to the North line of the County Road, thence along said road line and the North line of U.S. Highway 66* to the point of intersection with the West

line of Eastridge drive and thence North * * * ."

In September, 1965, the County Surveyor of Franklin County surveyed the locale for the plaintiffs, starting from recognized monuments, and following the above deed description, and prepared a plat thereof which became plaintiffs' exhibit 6. His plat shows that the county road referred to in the deed runs in a generally northwest to southeast direction, while Highway 66 in this area runs in a generally west to east direction. He testified that the north line of the county road did not intersect with Highway 66 at any point on the tract and that the point on that north line of the county road which approached nearest to Highway 66 was still thirty-two feet north of the north right-of-way line of the highway.

A rough draft of the pertinent parts of the surveyor's plat follows.

As shown by the plat, the entire area in question lies between Highway 66 and Interstate Highway 44.

Testimony shows that L. P. McHugh died on March 19, 1932, leaving a widow and five children.[1] On February 16, 1933, the Missouri Pacific Railroad executed a quit-claim deed to a part of its original right-of-way described in the following words:

"All that part * * * lying north of the right of way of State Highway Route 66 T.R. through the east 700 feet of the SE¼ of the NE¼ of Section 9, Township 43 North, Range 2 East."

In that deed the grantee was designated simply as "L.P.McHugh Estate".

In December 1949 the trustee in bankruptcy of the Missouri Pacific conveyed to Charles and Birteel Slade another part of that railroad's right-of-way which by its description amounted to a westward extension of that part of the right-of-way conveyed in 1933 to "L.P.McHugh Estate"; its eastern boundary was the line which lay "700 feet westwardly from and parallel with the east line of said Section 9."

The successive conveyances from Missouri Pacific were thus of lands lying

---

1. The record is barren of any reference to the contents of L. P. McHugh's will or to the administration of his estate.

north of Highway 66 and according to plaintiffs' plat (Exhibit 6) and brief such tracts lay south of the county road.

On April 5, 1954, the widow of L. P. McHugh by general warranty deed conveyed certain lands to James B. McHugh "or" Joseph D. McHugh, trustees[2], and on the same date the five children of L. P. McHugh, each describing himself as a joint tenant and not a tenant in common, executed an instrument entitled "Trust Agreement". In the widow's deed and the Trust Agreement the lands described are identical. While it is doubtful that the Trust Agreement created a trust, it is clear that it conferred on "James B. McHugh or Joseph D. McHugh as trustees" the broadest of agency powers to sell, convey or lease any of the described real estate.[3] In the widow's deed and in the trust agreement, that part of the land description, which is significant for present purposes follows:

"Beginning at the Northeast corner of said Section 9; run thence West on section line 20.15 chains to ¼ ¼ corner; thence South 19.68 chains *to the County Road; thence along said road,* South 69½ degrees East 8.70 chains; thence South 79½ degrees East 7.58 chains; thence North 88½ degrees East 4.54 chains *to the section line;* thence North 24.15 chains to the place of beginning," (Our emphasis.)

Plaintiffs' evidence thus discloses, inter alia, the existence of the following tracts of relevant McHugh land:

1. That described in the Trust Agreement which was bounded on the south by the county road. No question has been raised as to the capacity of the Trustee to exercise the power to sell and convey given by the Trust Agreement.

2. All that part of the original Missouri Pacific right of way lying north of Highway 66 and south of the county road through the east 700 feet of the SE¼ of the NE¼ of Section 9.

There was no evidence as to whether or not the "county road" was a dedicated road. There are slight differences of courses and distances between the road as delineated in the trust agreement and that shown on the surveyor's plat. However there was no contention that the location of the county road as shown on that plat was not the location of the county road on the date of the deed from defendant,— June 11, 1964.

Before proceeding to further consideration of the evidence, we call attention to the mild rebuke administered by the Supreme Court in Hamburg Realty Company v. Woods, 327 S.W.2d 138, 141:

" * * * In testifying as to locations, courses and distances shown on the maps and photographs, the witnesses were permitted, *with some gratifying exceptions,* to designate them by pointing to the exhibits and saying 'here', 'from here to here', 'then up (or 'down' or 'this way') to here', etc., few of which designations are shown in the record or marked on the exihibits. While it appears that the trial judge was able to follow the indications made by the witnesses, it is only by tedious and time-consuming study of the exhibits can the appellate court interpret such testimony with any degree of certainty and *very considerable portions of it are wholly meaningless to a reviewing court.* We

2. The grantees are described as "trustees in accordance with the trust powers in Trust Agreement as of April 5, 1954 * * *."

3. We forego any consideration of defendant's position as a mere agent, rather than as a title-holding trustee, and proceed to treat him as does·plaintiff, i.e.,

as a genuine trustee. In this connection we note in passing that defendant, by virtue of the widow's warranty deed, took whatever interest the widow had in the lands named therein. In addition, defendant was one of the five joint tenants who executed the Trust Agreement.

set forth that portion of the evidence that can be interpreted by reference to the exhibits, realizing that much of it will be without meaning to the reader who does not have before him each of the exhibits as the testimony of each of the witnesses given in relation thereto is considered." (Our emphasis.)

In our present case much more vigorous criticism might well be directed to like uncertainties produced by the manner in which witnesses testified. The record abounds in illustrations of such uncertainties which are emphasized by the lack of any effort by the respective counsel to make the written record resolve the dubieties of the spoken words. Some examples are set out in the footnote.[4]

After the execution of the instruments of April 5, 1954, the named trustee had full power to alienate land designated above as tract 1, which lay to the north of the county road. However the land over which the trustee was given a power of disposition by the Trust Agreement did not include the tract acquired in 1933 and designated above as 2.[5]

Plaintiff's evidence shows that defendant listed real estate for sale with a Mr. Dailey, a realtor of Pacific, Missouri. At the southeast corner of the tract covered by the trust agreement a large sign, about thirty feet long and five feet high, carried this legend in large letters: "13 acres commercial. Joe Dailey Realty Co." Superimposed on this sign was another reading "825 Ft. Hi-Way 66 Frontage", which Dailey had caused to be painted. Dailey marked the position of the combined sign on the plat which was plaintiffs' exhibit 6, showing that the sign was in the corner on the north side of the county road. When asked where he got his information relating to the 825 foot frontage, Dailey could not remember. The larger sign ("13 acres" etc.) was an old sign marking the former entrance to a subdivision lying along Eastridge Drive. The combined sign was at the location above designated at the time plaintiffs made their purchase. One of the plaintiffs testified that he relied on the sign in making the purchase. He testified further that the first time he had ever seen defendant was in the courtroom on the day of trial and that he had had no conversation with Dailey concerning the tract. Asked whether any representations as to highway frontage were made to him, the witness stated: "None other than what was on the sign."

The conveyance of June 11, 1964, was preceded by an earnest money contract but no copy of that contract could be found and there was no testimony as to its precise contents. Mr. Noonan, a real estate agent, was contacted by plaintiff Mrs. Avery who came to his office "looking for an area for a trailer camp." He showed her an area "that was listed by Dailey * * *. And from that point I was helping her and Dailey * * * get together on it * * *." He testified that in the earnest money contract there was nothing said about the land on the south side of the county road nor was anything there said about Highway 66 frontage.

The only one of the plaintiffs who testified was permitted to state, over objection, that he believed that he was getting 825 feet of highway frontage by the deed in question. He testified as to his purpose in making the purchase, the partial frustration of the purpose in not getting highway

---

4. "Q. Did you measure *this* line? A. Yes, sir, we did measure *this* line.
   "There is a stake there, yes, sir. And there is one *here*."
   "I didn't make the survey of *this* area up in *here*."
   "I didn't measure *this* line *here*."
   "I knew the length of *this* from the survey that I made" [before].

"On *this here* street *here*, which at this time was a county road."
"He owned down *in here*."
"It comes over the hill *in here*."
"*This* part *in here*." "*Right here*."
"*Right there*."

5. The deed of the McHugh widow also did not relate to tract 2.

frontage and the extent of the improvements made before discovery of the lack of frontage.

■ We conceive that, in such an action as this for breach of warranty of seisin, the burden rests upon a plaintiff-grantee, after establishing the identity of the real estate purportedly conveyed by the granting clause of the deed, to show what portion of that identified real estate he did not take by virtue of the deed.

Here, plaintiff's petition alleged the covenant of seisin wherein defendant "covenanted that he had the very estate, both in quantity and quality which his deed purported to convey" and for breach thereof alleges that "the defendant at the time of said conveyance was not seized of said estate, but that the beneficiaries under the purported Trust Agreement recorded in Book 183, page 63 in the office of the Recorder of Deeds of Franklin County were in fact seized of a part of said lands and Charles Slade and Birteel Slade, his wife were in fact seized of another part of said lands." [6]

■ If by this allegation of breach the plaintiff had intended to assert that defendant was not seized of the lands described *in the Trust Agreement* the fact of his lack of seisin would be immaterial because by the trust agreement he was given full power to sell and convey as the agent of all the signatories to that agreement. His personal lack of seisin would in no way detract from the seisin of his principals for whom he acted under the trust agreement in making conveyance of lands covered by that agreement. Therefore, there was no breach of the warranty of seisin insofar as the lands described in the Trust Agreement are concerned.

However, by alleging a breach in the form here used, namely, that a part of the deed-designated real estate was in the seisin of the five McHugh heirs and the Slades, plaintiff reveals his theory of the case. In joining the title of the five McHughs and the title of the Slades in the allegation of *what plaintiff did not get* plaintiff is, we believe, referring to the titles derived from the Missouri Pacific.[7]

In thus asserting a breach because plaintiffs did not acquire title to the lands derived from the Missouri Pacific, plaintiffs are asserting in this back-handed way that the description in the deed of June 11, 1964, includes the lands derived from the Missouri Pacific both by the "L.P.McHugh Estate" and by Mr. and Mrs. Slade.

Can those tracts conveyed by the Missouri Pacific be brought within the ambit of these words: "thence along said road line and the North line of U.S. Highway 66"? The "said road line" referred to is plainly the north line of the county road. In following the call of the deed the imaginary traveler starting at the "Qr.Qr. line" on the west has no need to use any course other than that along the north line of the county road in order to reach the stated objective. Following that course it is possible to proceed eastwardly along "said road line" *alone* to the designated point of intersection with Eastridge Drive. "Said road line" and the north line of U.S. Highway 66 are not continuous. As one follows the call of the deed and proceeds along the north line of the county road in the direction of the designated intersection he finds himself at all times a considerable distance north of the north line of Highway 66.

■ The great difficulty in giving meaning to "and the North line of U.S. Highway 66" lies in the discontinuity of "said road line" and the north line of Highway 66. The deed description at first reading would seem to indicate that the north road line of the county road ran into or became

---

6. No other cause of action is asserted.

7. In the course of a colloquy plaintiff's counsel stated: " * * * I alleged in

my petition that part of the land which the warranty deed purported to convey to Mr. Avery was in fact land belonging to Charles Slade and Birteel Slade."

coterminous with the north line of Highway 66; however the evidence is clear that such is not the fact. If the weary traveler desires to follow the directions of the deed description, he is given no instructions as to course in getting from "said road line" to the north line of Highway 66. The deed description being so worded it shows plainly the scrivener's assumption that "said road line" and the north line of Highway 66 are continuous. We know that the assumption is false. Accordingly, an impossibility has been injected into the course description. Being an impossibility that purported part of the course description has no meaning here, and accordingly cannot be regarded as describing any part of the boundary of the land purportedly conveyed to plaintiffs.

■ Eliminating such surplusage from the description of the lands conveyed, there remains no basis for a charge of breach of warranty of seisin. The plaintiff has failed to show that the deed description comprehends more land than that subject to the terms of the Trust Agreement. Unquestionably the deed has conveyed to plaintiffs all the real estate which defendant was empowered to convey by that agreement. Hence there was no proof that title to the land described in the deed was not conveyed to plaintiffs. Plaintiffs did not present a submissible case.

At the close of all evidence defendant moved for a directed verdict which was overruled. After judgment defendant filed his motion to set aside the verdict and the judgment and to enter judgment for defendant in accordance with his motion for a directed verdict, and, in the alternative, for a new trial.

The judgment is reversed and the cause is remanded to the Circuit Court with directions to enter judgment for the defendant in accordance with defendant's motion for a directed verdict.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed and the cause is remanded to the Circuit Court with directions to enter judgment for the defendant in accordance with defendant's motion for a directed verdict.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.